[Cite as *State v. Crytzer*, 2019-Ohio-2285.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-A-0077** |
| KYLE ROBERT CRYTZER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2017 CR 00373.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Christopher J. Boeman*, P.O. Box 583, Willoughby, OH 44096 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Kyle Robert Crytzer ("Mr. Crytzer"), appeals from the judgment of the Ashtabula County Court of Common Pleas, which sentenced him to an eleven-year prison sentence after a jury found him guilty of two counts of aggravated arson and one count of domestic violence.

{¶2} Mr. Crytzer contends the trial court abused its discretion and he received ineffective assistance of counsel because a recorded statement made by the victim

shortly after the house fire was not played for the jury and because the trial court encouraged the jury to deliberate quickly so the trial would be finished in one day.

{¶3} A thorough review of the record reveals Mr. Crytzer's assignments of error are without merit. First, the victim's statements to the investigator were not inconsistent with her trial testimony. Second, while the trial court did inquire if the jury was available and willing to deliberate into the evening so they would not have to return the following day, we find the trial court did not pressure the jury to rush into a decision, and there is no evidence the jury did not seriously consider the charges against Mr. Crytzer.

### Substantive and Procedural History

{¶4} On a summer evening in 2017, the victim, Danyelle Mullins ("Ms. Mullins"), planned a "girl's night out" with her friend, Chelsea Tuttle ("Ms. Tuttle"). They were in a downtown Ashtabula tavern when Mr. Crytzer texted Ms. Mullins, his ex-girlfriend and mother of his three-year old child, asking if he could join them. Ms. Mullins agreed, and he met them at the first tavern. The three then went into several more bars, and on to the way to the third, Mr. Crytzer left the two ladies and went in the other direction to meet a friend.

{¶5} Ms. Mullins and Ms. Tuttle decided to order a pizza to be delivered to Ms. Mullins' home and stopped at one more bar. The two shared a drink and noticed Mr. Crytzer sitting alone in a booth watching them. Mr. Crytzer walked back with them to Ms. Mullins' home. Ms. Mullins and Mr. Crytzer argued on her porch. He pushed his way inside and grabbed a piece of pizza. The two ladies then pushed him out of the house. Mr. Crytzer was outside on the porch, knocking on the windows and the door. He screamed that "he was gonna light the house on fire."

2

{¶6} Scared, the two ladies ran upstairs. Ms. Mullins called her brother, and Ms. Tuttle called the police. The porch was on fire, melting the siding. Ms. Mullins was able to extinguish the fire with a couple of Gatorade bottles. Investigators found orange-brown deck stain splashed all over the deck and a neighbor's ladder propped up against the side of the house going to a second story window.

{¶7} Mr. Crytzer was seen standing shirtless with his dog approximately two houses down, watching the fire, and was apprehended a short while later. His jeans and hands had orange-brown deck stain splattered on them, and he had a lighter in his pocket. At trial, Captain Stephen Chase of the City of Ashtabula Fire Department ("Captain Chase") opined that the fire was caused by "the deck stain that was splattered on the deck," which was ignited by an "open flame device."

{¶8} Captain Chase was the fire investigator who interviewed Ms. Mullins regarding the night of the fire, and that interview is the subject of assigned error in this appeal.

### *The Court Proceedings*

{¶9} Mr. Crytzer was indicted on two counts of aggravated arson in violation of R.C. 2909.02(A)(1) and R.C. 2909.02(A)(2), felonies of the first and second degree, respectively; breaking and entering in violation of R.C. 2911.13(B), a felony of the fifth degree; attempted burglary in violation of R.C. 2923.03(A)/2919.19(A)(1), a felony of the third degree; and domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree.

{¶10} There were two jury trials in this case. The first jury found Mr. Cyrtzer not guilty of breaking and entering and attempted burglary, but deadlocked on the remaining

3

counts of aggravated arson and domestic violence. The case was reset for a new jury trial on the remaining counts.

{¶11} At the second two-day trial, the state presented evidence and the testimony of Ms. Mullins; Nikki Harson, Ms. Mullins' neighbor who observed the fire; Mr. Crytzer standing watching the fire with his dog a few houses down; Dustin Pal, Ms. Mullins' brother whom Ms. Mullins called during the incident; Ms. Tuttle; Patrolman Eric Massie, who was at the scene; and Captain Chase. Mr. Crytzer presented the testimony of Michael Alan Keyes and Danielle Colicchio, his alibi witnesses.

{¶12} After Ms. Mullins testified, the defense asked to play the recorded interview between Captain Chase and Ms. Mullins for the jury. The defense argued Ms. Mullins portrayed herself as a virtuous woman on the stand, but in the interview she admitted to Captain Chase she was quite intoxicated the evening of the fire. Mr. Crytzer argued the statements made by Ms. Mullins in her interview with Captain Chase were inconsistent with her trial testimony. The trial court reviewed the statements and found no inconsistencies.

{¶13} Explaining the ruling, the trial court remarked, "I didn't get the impression that someone that claims they have two kids with two different guys and is not married and had five drinks in four different bars in the course of an evening portrayed herself incredibly virtuous. That isn't the impression I got from her; and she didn't deny that she made the statements you claim she did, she just said she doesn't recall." The trial court also noted, "[a]n omission is not an inconsistent statement."

{¶14} After the trial court denied the request to play the recording for the jury, defense counsel proffered the recording.

4

**{¶15}** Just before closing arguments, the trial court inquired of the jurors whether they wanted to stay past 4:30 p.m. to deliberate. There were no objections at the start of closing arguments at about 2:30 p.m. The trial court again inquired of the jurors if there was any reason they could not stay past 4:30 p.m., and there were no objections. The closing arguments were made. The jury was charged. The trial court again asked if there was any reason the jurors could not stay to deliberate. The jury retired at 4:01 p.m., deliberated, and returned their verdict in the early evening at 5:13 p.m.

**{¶16}** The jury found Mr. Crytzer guilty on all three counts.

**{¶17}** At the sentencing hearing on October 5, 2018, the trial court denied Mr. Crytzer's pro se motion for a new trial as well as his counsel's motion for new trial. Both motions argued many of the same points, but the trial court allowed Mr. Crytzer to argue on his own behalf. The trial court then sentenced Mr. Crytzer to an eleven-year term of imprisonment on the counts of aggravated arson (Count 2 merged into Count 1) and a concurrent six-month term of imprisonment on the count of domestic violence.

**{¶18}** Mr. Crytzer subsequently appealed and now raises four assignments of error:

**{¶19}** "[1.] The Trial Court abused its discretion to the prejudice of Mr. Crytzer when it did not allow Defense Counsel to impeach witness Ms. Mullins by playing portions of her recorded interview with Captain Chase for the jury.

**{¶20}** "[2.] Mr. Crytzer was denied effective assistance of counsel because Defense Counsel did not properly seek to use the recorded interview of Ms. Mullins by Captain Chase to impeach her testimony at trial.

**{¶21}** "[3.] The Trial Court abused its discretion to the prejudice of Mr. Crytzer in making statements to the jury prior to deliberations that implied that they had to reach a verdict in a short period of time.

**{¶22}** "[4.] Mr. Crytzer was denied effective assistance of counsel because Defense Counsel did not object to the Trial Court's statements to the jury implying that they had to reach a verdict in a short period of time."

**{¶23}** We will address Mr. Crytzer's contentions out of order because our discussion of Mr. Crytzer's first and third assignments of error are determinative of his claims of ineffective assistance of counsel.

### Evidentiary Rulings - Abuse of Discretion Standard of Review

**{¶24}** "A trial court has broad discretion in determining the admissibility of evidence. *State v. Hymore*, 9 Ohio St.2d 122, 128 (1967). Unless an abuse of discretion is apparent from a review of the record, appellate courts will not disturb evidentiary rulings. *Id.* An 'abuse of discretion' is one of art, connoting judgment exercised by a court, which does not comport with reason or the record. *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925)." *State v. Raia*, 11th Dist. Portage No. 2013-P-0020, 2014-Ohio-2707, ¶9. Stated differently, an abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *Id.*, quoting *State v. Beecher*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] * * * By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact

6

that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Id.*, quoting *Beechler* at ¶67.

## Prior Inconsistent Statements – Evid.R. 613

{¶25} In his first assignment of error, Mr. Crytzer contends the trial court should have permitted him, under Evid.R. 613 ("Impeachment by self-contradiction"), to impeach Ms. Mullins' testimony by introducing portions of Captain Chase's recorded interview with Ms. Mullins.

{¶26} Pursuant to Evid.R. 613(B), a party may introduce extrinsic evidence of a witness's prior inconsistent statement to impeach the witness's credibility. The rule states, in pertinent part:

{¶27} "Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:

{¶28} "(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice require;

{¶29} "(2) The subject matter of the statement is one of the following:

{¶30} "(a) A fact that is of consequence to the determination of the action other than the credibility of a witness; (b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B); (c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence."

{¶31} As Mr. Crytzer noted in his brief, "[t]he Rules of Evidence do not define when a statement is inconsistent. However, [a] general definition of an inconsistent statement

7

is: It is enough if the proffered testimony, taken as a whole, either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of the witness whom it is sought to contradict. Ohio's courts should be liberal when determining whether two statements are inconsistent. A trial court has the discretion to determine whether two statements are inconsistent and whether any difference between prior statements and trial testimony are material inconsistencies." (Citations and quotation omitted.) *Raia* at ¶26, quoting *State v. Freeman*, 7th Dist. Jefferson No. 07 JE 5, 2008-Ohio-2925, ¶53.

{¶32} Mr. Crytzer argues Ms. Mullins' testimony is inconsistent with her recorded interview with Captain Chase. When defense counsel asked Ms. Mullins what she told Captain Chase regarding the number of alcoholic beverages she consumed and how inebriated she was, Ms. Mullins replied that she did not remember. Later, defense counsel also inquired if she told Captain Chase that she was "very intoxicated and that [she] didn't remember much." Ms. Mullins replied that she did not recall the exact statement, but that she was in a state of shock and had very little sleep since the incident.

{¶33} A review of both the recorded interview and Ms. Mullins' testimony reveals the trial court did not abuse its discretion in excluding the recording because there were no material inconsistencies. During her testimony, Ms. Mullins never denied she was intoxicated on the night of the incident. She specifically stated the number of alcoholic beverages she consumed that night at each establishment. Defense counsel argued the recorded interview presented a very different version of events, but a review of the testimony at trial does not present any inconsistency. There was no dispute that Ms. Mullins was inebriated on the night of the incident. She did not deny or downplay her own

8

actions. The timeline and description of events leading up to the fire as described to Captain Chase and as described to the trial court were consistent.

**{¶34}** Quite simply, there were no inconsistencies of fact, material or otherwise, between the recorded interview and Ms. Mullins's testimony.

**{¶35}** Mr. Crytzer's first assignment of error is without merit.

### Jury Deliberations

**{¶36}** In his third assignment of error, Mr. Crytzer contends the trial court abused its discretion to his prejudice in making statements to the jury prior to deliberations that indicated they had to reach a verdict in a short period of time.

**{¶37}** Because Mr. Crytzer failed to object to the trial court's statements at trial, we review only for plain error, which "'does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise.'" *State v. Casino*, 8th Dist. Cuyahoga No. 92536, 2010-Ohio-510, ¶11, quoting *State v. Moreland*, 50 Ohio St.3d 58, 62 (1990).

**{¶38}** "While performing his or her duties, a trial judge must recognize the effect his comments may have upon a jury." *Id.* at ¶12, citing *State v. Thomas*, 36 Ohio St.2d 68, 71 (1973). "There is no doubt that juries tend to give great deference to a trial judge's words." *Id.*, citing *Thomas* at 71. "Therefore, certain improper remarks by a trial judge may prejudice a defendant's constitutional rights to a fair trial." *Id.*, citing *State v. Wade*, 53 Ohio St.2d 182, 188 (1978).

**{¶39}** "Generally, in determining whether a trial judge's remarks were prejudicial, the courts will adhere to the following rules: (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best

9

position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel." *Id.* at ¶13, citing *Wade; see generally*, Annotation, 62 A.L.R.2d 166 (1958).

{¶40} Mr. Crytzer contends that the trial court prejudiced the jury by inquiring whether they "really want to come tomorrow" and then stating, "so, we're gonna stay here and get it done." The trial court explained, "[t]he plan is for you guys to wrap this thing up today so that you don't have to come back tomorrow. So, is there any reason why you can't stay even if we go – if we go past 4:30? Most people want to get it done. That's my experience. I'm seeing no Jurors to be in acknowledgement, that you just want to stay and conclude this today so that you don't have to come back. So that will be what we're going to do."

{¶41} The record reflects the trial court inquired at three separate points before closing arguments began whether there would be any problem with jurors staying until they reached a verdict, so they would not have to return to court the following day. At each point, no juror expressed a problem with the plan for deliberations. Closing arguments began at about 2:30 p.m. The jury began their deliberations at about 4:00 p.m. and returned their verdict in about an hour and fifteen minutes.

{¶42} In *Casino, supra*, the Eighth District Court of Appeals addressed a similar situation, where the trial court indicated it "hoped the matter could have a verdict that day," and proposed that the jury eat their lunches while deliberating and avoid asking

unnecessary questions of the court in order to save time. *Id.* at ¶20. The court found that these statements did not indicate any pressure being asserted upon the jury. *Id.*

{¶43} In this case, apart from the statements about staying past 4:30 p.m., the trial court, as in the *Casino* case, made other comments indicating his desire for the jury to reach a calculated and well-considered decision. Thus, in *Casino*, the trial court "cautioned the jurors to only decide the case after discussing the matter thoroughly with their fellow jurors. He further provided that they 'should not surrender honest convictions in order to be congenial or to reach a verdict solely because of the opinions of your fellow jurors.'" *Id.* at ¶21. *See also, State v. Hobbs*, 8th Dist. Cuyahoga No. 81533, 2003-Ohio-4338, ¶31 ("* * * the judge merely instructed the jury that he was 'hopeful' that a decision could be reached that day. He did not urge the jury to hurry its decision and stated that they would be permitted to go home and come back the next day or another day if they could not reach a verdict. He did not comment on the defendant's guilt or the strength of the State's case. * * * [T]here is no evidence that defendant was prejudiced by the trial court's statements."

{¶44} The trial court in this case properly instructed and cautioned the jurors in a nearly identical manner to the trial court in *Casino*. He told the jurors: "You must not be influenced by any consideration of sympathy or prejudice. It is your duty to carefully weigh the evidence, to decide the disputed questions of fact, to apply the instructions of law to your findings, and to render your verdict accordingly. Your duty as Jurors is to arrive at a just verdict. * * *"

{¶45} Further, the trial court instructed the jurors to ask questions and inquire if they had difficulty remembering the instructions they were given. He concluded by saying

11

"Your initial conduct upon commencing deliberations is important. It is not wise to express immediately a determination or insist upon a certain verdict. * * *"

{¶46} Under these circumstances, we do not find the trial court's comments coercive or prejudicial in any manner. Mr. Crytzer's third assignment of error is without merit.

## Ineffective Assistance of Counsel

{¶47} In his second and fourth assignments of error, Mr. Crytzer raises claims of ineffective assistance of counsel.

{¶48} "In determining whether counsel's performance constitutes ineffective assistance, an appellate court must find that counsel's actions fell below an objective standard of reasonableness and that appellant was prejudiced as a result." (Citations omitted.) *State v. Stoutamire*, 11th Dist. Trumbull No. 2008-T-0108, 2009-Ohio-6228, ¶50; *see also Strickland v. Washington*, 466 U.S. 668 (1984). "In performing its review, an appellate court is not required to examine counsel's performance under the first prong of the *Strickland* test if an appellant fails to prove the second prong of prejudicial effect." (Citations omitted.) *Id.* "In demonstrating prejudice, an appellant must show that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different." (Citations omitted.) *Id.* Further, "[a] strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range of professional assistance." (Citations omitted.) *Id.*

{¶49} In his second assignment of error, Mr. Crytzer argues his counsel was ineffective for not properly seeking to use the recorded interview of Ms. Mullins by Captain

Chase to impeach her testimony at trial. Mr. Crytzer also argues in his brief that defense counsel did properly seek to use the recording but "[s]hould the appellate court determine that defense counsel made some procedural error in how defense counsel confronted Ms. Mullins with her prior inconsistent statements, then Mr. Crytzer received ineffective assistance of counsel."

{¶50} In his fourth assignment of error, Mr. Crytzer argues he was denied effective assistance of counsel because defense counsel did not object to the trial court's statements to the jury implying that they had to reach a verdict in a short period of time.

{¶51} Because we have separately addressed the underlying grounds for these two assignments of error and found them to be without merit, Mr. Crytzer's claims of ineffective assistance of counsel based upon the same grounds are likewise without merit. *See State v. Henderson*, 39 Ohio St.3d 24, 33 (1988) ("The grounds which underlie each of these instances have already been separately addressed and found to be without merit. Accordingly, we need not address the counsel-performance component of these grounds."); *See also Hobbs, supra,* at ¶26*.

{¶52} Mr. Crytzer's second and fourth assignments of error are without merit.

{¶53} The judgment of the Ashtabula County Court of Common Pleas is affirmed.


CYNTHIA WESTCOTT RICE, J., concurs,

MATT LYNCH, J., concurs with a Concurring Opinion.


————————————

MATT LYNCH, J., concurs with a Concurring Opinion.

{¶54} I concur in the judgment and opinion of the majority, affirming Crytzer's convictions. I write separately with respect to the third assignment of error, to express my reservations regarding the propriety of the trial judge's comments urging the jury to reach a verdict on the day trial concluded so as to avoid having to return for a second day of deliberations. To the extent that the majority did not find these comments prejudicial, I concur in the disposition of this assignment of error as well.

{¶55} As a general proposition, any comments by a trial court which have the effect of depriving a defendant of a fair trial may be grounds for reversal. *E.g.*, *State v. McCarley*, 9th Dist. Summit No. 22562, 2006-Ohio-1176, ¶ 16 (statements made bolstering the credibility of a witness); *State v. Collins*, 8th Dist. Cuyahoga No. 89808, 2008-Ohio-3016, ¶ 18 (comments regarding the defendant's incarceration and potential security threat); *State v. Smith*, 11th Dist. Portage Nos. 2006-P-0101 and 2006-P-0102, 2008-Ohio-3251, ¶ 78 (criticism and rebuking of defense counsel). With regard to jury deliberations specifically, the court may not pressure a jury to reach a verdict in derogation of its oath to reach a fair and impartial decision. *State v. Casino*, 8th Dist. Cuyahoga No. 92536, 2010-Ohio-510, ¶ 18; *Noble v. Aldred*, Cal.App. No. D042196, 2004 WL 1354260, *8 ("[b]y repeatedly commenting on the undesirability of deliberations having to continue beyond that Friday afternoon, the trial judge pressured-or at least encouraged-the jury to reach a verdict through 'compromise or concession to expediency'").

{¶56} In the present case, the trial court made multiple comments to the jury indicating that "the plan" was to reach a verdict "so that you don't have to come back tomorrow." Also: "I like to get things done a day at a time"; "is there anyone that likes

14

looking at me so much that you just really want to come back tomorrow"; "most people want to get it done"; and "I'm seeing * * * that you just want to stay and conclude this today so that you don't have to come back." Certainly, the court's anxiety to "wrap things up" in a day might suggest to the jury that the imperative of reaching an impartial verdict could be tempered by considerations of expediency.

**{¶57}** The potentially deleterious effect of the trial court's comments, however, was offset in the present case by the court's diligence in instructing the jury "to arrive at a just verdict" without partiality or bias and not to "surrender honest convictions in order to be congenial or to reach a verdict." The court was also solicitous to inquire whether jurors had any physical limitations or domestic obligations that would prevent them from giving due consideration to the evidence in reaching their verdict. In the absence of any indication that the jury was motivated by considerations of expediency in returning a verdict, it cannot be said that the court's comments were prejudicial.

**{¶58}** With these reservations, I concur in the judgment and opinion.