[Cite as *State v. Elamin*, 2023-Ohio-1534.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2022-T-0034** |
| Plaintiff-Appellee, | |
| - v - | Criminal Appeal from the Girard Municipal Court |
| SAAD I. ELAMIN, | Trial Court No. 2020 CRB 01371 |
| Defendant-Appellant. | |

## O P I N I O N

Decided: May 8, 2023
Judgment: Affirmed

*Michael A. Scala*, Girard City Prosecutor, Girard Municipal Court, 100 North Main Street, Girard, OH 44420 (For Plaintiff-Appellee).

*Jason M. Jordan*, Jason M. Jordan Legal Services, LLC, 3580 Darrow Road, Stow, OH 44224 (For Defendant-Appellant).

JOHN J. EKLUND, P.J.

{¶1}   Appellant, Saad Elamin, appeals his convictions of Soliciting, a third-degree misdemeanor in violation of R.C. 2907.24(A)(1), and Possessing Criminal Tools, a first-degree misdemeanor in violation of R.C. 2923.24(A).  For the following reasons, we affirm the judgment of the Girard Municipal Court.

{¶2}   The Ohio Bureau of Criminal Identification and Investigation created a website, "skipthegames.com," as part of a "sting operation" where Special Agent Brenda Golec would "assume the role of a prostitute and [talk] to Johns that would contact the number that was associated to the ad that was placed."   On December 4, 2020, Appellant

saw an advertisement for the website and texted the number to inquire about soliciting prostitution. On December 6, 2020, Appellant and Special Agent Golec texted back and forth discussing the cost for prostitution and agreed upon a place and time to meet. When Appellant arrived at the motel to meet Special Agent Golec, the Liberty Township police department attempted to "grab" Appellant when he opened the door. Appellant ran away from the peace officers, and they followed and arrested him. When he was arrested, Appellant had a tub of petroleum jelly and a condom in his possession.

{¶3} The peace officers brought Appellant to the police department. The detective interviewing Appellant asked him his name and social security number, and then read Appellant his Miranda rights. After reading him his rights, the detective asked Appellant for his phone number. Directly after writing down Appellant's phone number, the detective read him a Miranda rights waiver form. Appellant signed the form waiving his rights and agreeing to speak with the detectives. The police department charged Appellant on four counts: Soliciting, Possessing Criminal Tools, Resisting Arrest, and Obstructing Official Business.

{¶4} Trial had been delayed several times for several reasons, including the COVID-19 pandemic. The Girard Municipal Court eventually scheduled a jury trial to begin on February 24, 2022. On February 22, 2022, Appellant moved to continue trial "[d]ue to the past 2-week period involving the sudden stroke and sequent death" of trial counsel's father. The prosecution did not object to the motion. The court denied the motion, explaining that it had been filed two days before trial, "this matter has been pending since December 6, 2020," "[t]he issues in this case are not complicated," and

2

"the Court has summoned over 100 potential jurors and the trial should last no longer than two days."

{¶5} The jury trial began on February 24, 2022. Special Agent Golec, the peace officers who arrested Appellant, and the detectives who booked and interviewed Appellant testified for the prosecution. The state offered four exhibits into evidence: Exhibit 1: the Miranda warning and waiver form Appellant signed; Exhibit 2: the text messages between Appellant and Special Agent Golec; Exhibit 3: the advertisement for "skipthegames.com;" and Exhibit 4: the video of the detectives interviewing Appellant after his arrest.

{¶6} The defense objected to Exhibits 2 and 3 being admitted into evidence, arguing that the state failed to authenticate both exhibits. The state argued that Exhibit 2 was authenticated because Special Agent Golec testified that she had sent or received the messages. The state argued that Exhibit 3 was authenticated because a detective who worked on the sting operation testified that the advertisement was one used in that operation. The court admitted all four exhibits into evidence.

{¶7} After the state rested its case, the defense moved to acquit on all counts pursuant to Crim.R. 29. The court granted the motion to acquit only on the count of Obstructing Official Business and denied the motion as to all other counts.

{¶8} Appellant testified at trial that he never intended to solicit for prostitution. Appellant stated that he believed the advertisement to be a scam and that he only went to the motel to "catch" the culprit.

{¶9} The jury found Appellant guilty of Soliciting and Possessing Criminal Tools, but found him not guilty of Resisting Arrest.

3

{¶10}   Appellant appeals and raises four assignments of error.

{¶11}   First assignment of error: "The trial court committed reversible error when it denied Defendant-Appellant's motion to continue filed February 22, 2022."

{¶12}   "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." *Heerlein v. Farinacci*, 11th Dist. Lake No. 2008–G–2818, 2008-Ohio-4979, ¶ 12, citing *State v. Unger*, 67 Ohio St.2d 65, 423 N.E.2d 1078 (1981), paragraph one of the syllabus. "[A]n appellate court will not interfere with the exercise of this discretion unless the action of the court is plainly erroneous and constitutes a clear abuse of discretion." *State ex rel. Buck v. McCabe*, 140 Ohio St. 535, 538, 45 N.E.2d 763 (1942).

{¶13}   "'The term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record.' *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-208, ¶ 30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 [148 N.E. 362] (1925)." *State v. Raia*, 11th Dist. Portage No. 2013-P-0020, 2014-Ohio-2707, ¶ 9. Stated differently, an abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *Id.*, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting Black's Law Dictionary 11 (8th Ed.Rev.2004). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] * * * By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Id.* quoting *Beechler* at ¶ 67.

4

{¶14} "'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.'" *Unger* at 67, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589-590, 84 S.Ct. 841, 11 L.Ed.2d 921, (1964).

{¶15} "'In determining whether the trial court abused its discretion in granting or denying the motion for a continuance, the reviewing court must balance the interests of judicial economy and justice,'" as well as the court's right to control its own docket, "against any potential prejudice to the defendant." *Timeoni v. Ciancibelli*, 11th Dist. Ashtabula No. 2006–A–0077, 2007-Ohio-2312, ¶ 17, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983); *State v. Griesmar*, 11th Dist. Lake No. 2009–L–061, 2010-Ohio-824, ¶ 18.

{¶16} "In dealing with a motion to continue, a trial court should consider the following factors: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconvenience to litigants, witnesses, opposing counsel and the court; (4) whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; (5) whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and (6) other relevant factors, depending on the unique facts of each case." *Waldorf v. Waldorf*, 11th Dist. Trumbull No. 2013–T–0094, 2015-Ohio-1207, ¶ 11; *Unger* at 67–68.

{¶17} As recited above in ¶ 4, the court explained its reasons for denying the motion to continue: that the case had been ongoing since December 2020, that the motion

had been filed 2 days before trial, that the court summoned over 100 jurors, and that the issues in the case were not complicated.

{¶18} Here, the court exercised sound, reasonable, and legal decision-making in denying Appellant's motion to continue. The court, as evidenced through its judgment entry, balanced the interests of judicial economy and justice, as well as the court's right to control its own docket against any potential prejudice to the defendant. Denying the motion did not prejudice Appellant or Appellant's trial counsel because (as the trial court reasoned) he had had over one year to prepare for trial, the case had been continued before, and the issues in the case were not complicated. In the interest of judicial economy, the trial court's denying Appellant's motion to continue was not arbitrary.

{¶19} Appellant's first assignment of error is without merit.

{¶20} Second assignment of error: "The trial court committed reversible error when it allowed the admission of State's Exhibit 2 and 3 over Defendant-Appellant's objection."

{¶21} "A trial court's ruling on the admission of evidence is generally reviewed for an abuse of discretion." *State v. Dotson*, 11th Dist. No. 2017-T-0103, 2019-Ohio-2393, 139 N.E.3d 430, ¶ 49.

{¶22} Evid.R. 901(A) provides: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

{¶23} Evid.R. 901(B)(1) provides that a document may be authenticated through testimony by a knowledgeable witness that a matter is what it is claimed to be.

6

**{¶24}** Appellant first asserts that Exhibit 2, the text messages between himself and Special Agent Golec, was not properly authenticated because Special Agent Golec testified that she did not specifically remember the conversation. However, upon reading the messages, Special Agent Golec remembered that she did have the conversation and relayed the details to the court. "Statements from text messages are properly authenticated and are admissible as a party-opponent admission when the recipient of the messages identifies the messages as coming from the defendant." *State v. Bickerstaff*, 11th Dist. Ashtabula No. 2014–A–0054, 2015-Ohio-4014, ¶ 19. Here, Special Agent Golec testified that the text messages were conversations she had with Appellant (satisfying Evid.R. 901(B)(1)) and the messages were sent by the phone number that Appellant gave the detectives as his own. Thus, Exhibit 2 was properly authenticated.

**{¶25}** We next address the authentication of Exhibit 3, the advertisement for "skipthegames.com."

**{¶26}** Detective Altier, who had investigated Appellant after his arrest, testified that he was "familiar" with the advertisement for "skipthegames.com." When showed the advertisement at court, Detective Altier testified that he recognized it as "the ad that the human trafficking task force was using on that day."

**{¶27}** Pursuant to Evid.R. 901(B)(1), this authenticates the advertisement and constitutes testimony that the advertisement was what it was claimed to be.

**{¶28}** The court did not abuse its discretion in admitting Exhibits 2 and 3 as both were properly authenticated under Evid.R. 901(B)(1).

**{¶29}** Appellant's second assignment of error is without merit.

7

{¶30} Third assignment of error: "The trial court committed reversible error when it failed to grant Defendant-Appellant's Motion for judgment of acquittal where the state failed to provide sufficient evidence to meet all of the essential elements of the charge of Possession of Criminal Tools and Solicitation."

{¶31} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29. Under Crim.R. 29(A), "a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 261 (1978), at syllabus. "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 11th Dist. Trumbull Nos. 2003-T-0166, 2003-T-0167, 2004-Ohio-6688, ¶ 18.

{¶32} "'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The appellate court's standard of review for sufficiency of evidence is to determine, after viewing the evidence in a light most favorable to the prosecution, whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

8

**{¶33}** When evaluating the sufficiency of the evidence, we do not consider its credibility or effect in inducing belief. *Thompkins* at 387. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. *Id.* This naturally entails a review of the elements of the charged offense and a review of the state's evidence. *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

**{¶34}** R.C. 2907.24(A), Soliciting, provides: "No person shall knowingly solicit another to engage in sexual activity for hire in exchange for the person receiving anything of value from the other person."

**{¶35}** The evidence here, including Appellant's own testimony, demonstrates that Appellant texted Special Agent Golec to solicit her for sexual activity for value. Appellant testified that he texted Special Agent Golec, but that it was all a ploy to catch her for scamming him. Exhibit 2, the text messages, show that Appellant had asked Special Agent Golec about her physical appearance and if she would be naked when he arrived. The text messages and Appellant's testimony also included his offer to pay her $60 for her services and that he had $60 in his possession when the officers arrested him.

**{¶36}** The jury could have believed either Appellant's testimony or the state's evidence, but we are not passing judgment on the jury's credibility determinations. After viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that Appellant knowingly solicited another to engage in sexual activity for hire.

**{¶37}** R.C. 2923.24(A), Possessing of Criminal Tools, provides: "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

Case No. 2022-T-0034

{¶38} Here, the evidence and circumstances show that Appellant possessed a cellphone, condom, and a tub of petroleum jelly with the purpose of using those instruments criminally. Appellant testified at trial that he saw the advertisement and used his cellphone to text Special Agent Golec to arrange a time and place to meet with her for prostitution services. Appellant also testified that he texted Special Agent Golec concerning the price and asked if she would accept $60. Appellant had $60 in cash in his wallet at the time of arrest. Other tools Appellant possessed were the tub of petroleum jelly and the condom. Appellant denied that he intended to use those instruments with Special Agent Golec.

{¶39} Again, the jury could have believed Appellant's testimony about the petroleum jelly and condom, but, in a sufficiency of the evidence analysis, we do not pass judgment on the jury's credibility determinations. After viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that Appellant possessed devices or instruments with the intent to use those tools criminally.

{¶40} Appellant's third assignment of error is without merit.

{¶41} Fourth assignment of error: "The trial court committed reversible error when it permitted evidence of Defendant-Appellant's phone number to be used at trial when there was not a knowing, voluntary, and intelligent waiver of Defendant-Appellant's Miranda rights."

{¶42} Appellant specifically contends that he did not waive his Miranda rights when he gave the detectives his phone number (which was used as evidence that he committed the crimes) because he had given his number before he signed the written

10

waiver. However, the evidence shows that the detectives had verbally read Appellant his rights prior to asking for his phone number.

{¶43} "The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. * * * Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (Emphasis added.) *Miranda v. Arizona*, 384 U.S. 436 at 478, 86 S.Ct. 1602, 16 L.Ed.2d 694. As a result, the requirement of Miranda warnings "applies only when a suspect is subjected to both custody and interrogation." *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 119.

{¶44} "A Miranda waiver need not be in writing to be valid." *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). Nor is "an explicit statement of waiver" necessary. *Id.* at 375-376, 99 S.Ct. 1755. "Where the prosecution shows that a Miranda warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis v. Thompkins*, 560 U.S. 370, 384, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010).

{¶45} In this case, the detectives gave Appellant his Miranda warnings prior to asking for his phone number. Exhibit 4 shows that Appellant verbally stated that he understood that he had the right to remain silent after the detectives read him his rights. Thus, Appellant's giving the detectives his phone number after being read his rights establishes an implied waiver of those rights.

{¶46} Appellant's fourth assignment of error is without merit.

11

{¶47} The judgment of the Girard Municipal Court is affirmed.

MATT LYNCH, J.,

EUGENE A. LUCCI, J.,

concur.

12