[Cite as *State v. Raia*, 2014-Ohio-2707.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-P-0020** |
| PAUL RAIA a.k.a. PETER PAUL RAIA, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Municipal Court, Case No. 12 CRB 636.

Judgment: Reversed and remanded.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Pamela J. Holder*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH  44266 (For Plaintiff-Appellee).

*Frank J. Cimino*, 250 South Chestnut Street, Suite #18, Ravenna, OH  44266 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1}  This appeal is from the Portage County Municipal Court.  Appellant Paul Raia was found guilty of exposing his private parts in violation of R.C. 2907.09(A)(1), a fourth degree misdemeanor.  The jury also found that Raia had two prior convictions of public indecency, elevating his current conviction to a second degree misdemeanor. On appeal, Raia alleges that the single judgment entry containing both of his prior convictions was improperly admitted because it did not set forth the trial judge's signature.  He also alleges that the trial court's various limitations on his cross-

examination of the state's witnesses violated his right to confrontation. For the following reasons, we reverse and remand.

{¶2} On the afternoon of March 21, 2012, Danielle Keller and Stacey Parsons went to a Burger King in Kent, Ohio for lunch. Parsons ordered a salad and sat at a table where she saw Raia sitting at another table with his legs apart and his private parts exposed. Parsons went to Keller, who was still ordering lunch, and told her what she saw. The two decided to sit at the table where Parsons originally sat. Keller glanced at Raia and saw that his testicles were exposed through the bottom of his shorts and told Parsons "the mouse is back out of the house."

{¶3} Parsons turned around and saw Raia smiling with his legs spread apart and his testicles exposed. As a result, Parsons became distressed and went to the restroom to call the police. However, because her cell phone battery was low, she went to Gary Trump, a manager at the Burger King, to complain about the situation. Trump testified that he went over to Raia to investigate. Upon walking over to the table where Raia was sitting, Trump saw that Raia's penis and testicles were exposed through the bottom of his shorts. He informed Raia that his genitals were exposed and told him to cover himself up. Raia complied.

{¶4} Shortly thereafter, Keller informed Parsons that Raia's private parts were exposed again. Keller and Parsons left the restaurant. After apologizing to Keller and Parsons for the incident, Trump told Raia that he had to leave the restaurant. Upon leaving, Keller and Parsons called the police who apprehended Raia shortly thereafter.

{¶5} At trial, Raia's defense consisted solely of his own testimony. According to Raia, he was the victim of various malicious lies directed at him. He claimed that Keller and Parsons were lying because they were cross-dressers, and that because

2

cross-dressers have an intrinsic bias against men, they sought to make false accusations against him. Raia also claimed the police officer wrongfully arrested him because the officer is rewarded for each arrest he makes. Additionally, Raia claimed that he could not have wrongfully exposed himself because he was wearing tight underpants.

{¶6} As his first assignment of error, Raia alleges that:

{¶7} "The trial court committed prejudicial error in overruling the Defendant-Appellant's Motion to Exclude the conviction of Case No. K98 CVB 1221S filed in the Portage County Municipal Court, in Kent Division, on December 2, 1998, in that the judgment entry did not contain the signature of the presiding judge, Donald. H. Martell."

{¶8} Within this assignment of error, Raia makes two arguments. He first alleges that the trial court's admission of the judgment entry of Raia's two previous convictions for public indecency was improper because the judgment entry did not comply with R.C. 2945.75(B)(1) or Crim.R. 32(C). He also alleges that the judgment entry was not properly authenticated. The State does not defend the propriety of the trial court's admission; rather, the state contends it is harmless error.

{¶9} We first address the issue of compliance with Crim.R. 32(C) and R.C. 2945.75(B)(1). A trial court has broad discretion in determining the admissibility of evidence. *State v. Hymore*, 9 Ohio St.2d 122, 128 (1967). Unless an abuse of discretion is apparent from a review of the record, appellate courts will not disturb evidentiary rulings. *Id.* An "abuse of discretion" is one of art, connoting judgment exercised by a court, which does not comport with reason or the record. *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). The Second Appellate District also

3

recently adopted a similar definition of the abuse-of-discretion standard: an abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004). When an appellate court is reviewing a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error[.] * * * By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Id.* ¶67.

{¶10} In regard to proving a past conviction, the state may prove the past conviction pursuant to R.C. 2945.75(B)(1). R.C. 2945.75(B)(1) provides: "Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction." When proving a past conviction pursuant to R.C. 2945.75(B)(1), the judgment entry must comply with Crim.R. 32(C). *State v. Gwen*, 134 Ohio St.3d 284, 2012-Ohio-5046, ¶23. To comply with Crim.R. 32(C), "the judgment entry must set forth (1) the fact of a conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk." *Id.*

{¶11} The judgment entry admitted does not contain a signature of the trial judge and therefore did not comply with Crim.R. 32(C). Consequently, the admission of the judgment entry was improper. However, in *Gwen*, the Ohio Supreme Court made clear that R.C. 2945.75(B)(1) is not the only way to prove a previous conviction. *Id.*, ¶22. In *Gwen* the court held that the defendant may admit or stipulate that the defendant has a

4

previous conviction. *Id.*, ¶12, 14. Raia admitted on the stand that he had two previous convictions for public indecency. Because his testimony acted as an alternate means of proving his prior convictions for public indecency, the admission of the judgment entry to prove the two previous convictions, although improper, was harmless error. *Id.*, ¶12; Crim.R. 52(A).

{¶12} In light of the foregoing, Raia's alleged error with regard to the improper authentication of the judgment entry is also harmless error. Accordingly, the first assignment of error is without merit.

{¶13} Because the remaining assignments of error center on Raia's right to confront the state's witnesses, we will consolidate these assignments for review. As Raia's second, third, and fourth assignments of error, he respectively alleges:

{¶14} "The trial court committed prejudicial error in sustaining granting (sic) the Plaintiff-appellee's Objection to allowing the Defendant-Appellant to cross-examine the prosecution's first witness, Gary Trump, on the sworn statement that he had made as part of the complaint filed in the Portage County Municipal Court, Kent Division, on March 21, 2012. Said Complaint was a sworn statement regarding the allegations of the offense filed by the State of Ohio on that date.

{¶15} "The trial court committed prejudicial error in granting the Plaintiff-Appellee's Objection to the Defendant'-Appellants (sic) inquiry of witnesses Gary Trump and Office (sic) John Stirm for signing under oath the Complaint and the preparation of the Complaint by John Stirm in establishing a complaint that alleged things that no witness testified to during the course of the trial. As a result of that, the failure to allow cross-examination of the sworn statement by not only Gary Rump (sic) but also prepared by Office (sic) John Stirm created prejudicial error to the Defendant

5

in the trial of this matter. Said prejudicial error can only be highlighted by the question posed to the judge during deliberations. Said question required the court to allow jurors to review the original complaint filed in this matter. The court refused to allow said Complaint to be presented to the jury.

{¶16} "The trial court committed prejudicial error in precluding Defendant-Apellant from questioning the two individuals, Parsons and Keller, as to their sexual orientation as to whether or not they may be prejudiced against the male gender."[1]

{¶17} Shortly before trial the state sought to amend the complaint that Trump signed and charge Raia under R.C. 2907.09(A)(1) claiming that Raia exposed his genitals instead of R.C. 2907.09(A)(3), which alleged that Raia engaged in conduct that an ordinary person would view as sexual conduct or masturbation. Raia alleges that the change in the amended complaint to charge Raia under R.C. 2907.09(A)(1) created a prior inconsistent statement which could be used to impeach Trump and Officer Stirm's testimony. Specifically, Raia alleges that in the original complaint, Trump, as the complaintant, alleged that Raia "engage[d] in conduct that to an ordinary observer would appear to be sexual conduct or masturbation;" however, Trump never testified that he saw either of those actions at trial. According to Raia, he should have been able to cross-examine Officer Stirm and Trump as to why their testimony differed from the initial complaint. The state claims that Raia has waived the issue because it should have been addressed in a pre-trial motion.

{¶18} Before turning to the merits, we address waiver. The state contends that the defense was aware the original complaint was mistakenly charged under R.C.

---

1. Although in the assignment of error Raia references impropriety in the cross-examination of Parson, in his brief he raises no argument in support. We therefore limit our analysis to the examination of Keller.

2907.09(A)(3), that Raia should have raised an objection to the original complaint, and that this failure to do so resulted in his waiver of the issue. Under Crim.R. 12(H) "[f]ailure by the defendant to raise defenses or objections or to make requests that must be made prior to trial, at the time set by the court pursuant to division (D) of this rule, or prior to any extension of time made by the court, shall constitute waiver of the defenses or objections, but the court for good cause shown may grant relief from the waiver." Crim.R. 12(C) provides in pertinent part that:

{¶19} "Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue. The following must be raised before trial: * * *

{¶20} "(2) Defenses and objections based on defects in the indictment, information, or complaint (other than failure to show jurisdiction in the court or to charge an offense, which objections shall be noticed by the court at any time during the pendency of the proceeding)."

{¶21} The state's waiver argument is unpersuasive because Raia is not attacking the propriety of the original complaint. As Trump's statement in the original complaint was intended to be used solely for impeachment purposes, Raia is not claiming the original complaint was defective. Rather, Raia is claiming that Trump was an impeachable witness due to his prior inconsistent statement. Crim.R. 12(C)(2) does not require the defense to raise an attack on credibility in a pre-trial motion.

{¶22} Turning to the merits, the Confrontation Clause entitles a defendant to engage in an effective cross-examination of his or her accusers. *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). It does not, however, guarantee a "cross-examination that is effective in whatever way, and to whatever extent, the defense

7

might wish." *Id.* A trial court may reasonably restrict the scope of cross-examination based upon concerns for prejudice, harassment, confusion of the issues, or general relevancy. *State v. Melton*, 11th Dist. Lake No. 2009-L-078, 2010-Ohio-1278, ¶35. Therefore, the Confrontation Clause guarantees only an *opportunity* for effective cross-examination. *Fensterer*, *supra*. The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. *State v. Green*, 66 Ohio St.3d 141, 147 (1993), citing *Afford v. United States*, 282 U.S. 687, 691 (1931).

{¶23} Evid.R. 607(A) governs the admissibility prior inconsistent statements for the purposes of impeachment. Evid.R. 607 provides in pertinent part that:

{¶24} "(A) * * * The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. * * *

{¶25} "(B) A questioner must have a reasonable basis for asking any question pertaining to impeachment that implies the existence of an impeaching fact." The Seventh District has provided the following definition of a prior inconsistent statement:

{¶26} "The Rules of Evidence do not define when a statement is inconsistent. However, [a] general definition of an inconsistent statement is: It is enough if the proffered testimony, taken as a whole, either by what it says or by *what it omits to say*, affords some indication that the fact was different from the testimony of the witness whom it is sought to contradict. Ohio's courts should be liberal when determining whether two statements are inconsistent. A trial court has the discretion to determine whether two statements are inconsistent and whether any differences between prior

8

statements and trial testimony are material inconsistencies." (Citations and quotation omitted.) (Emphasis added.) *State v. Freeman*, 7th Dist. Jefferson No. 07 JE 5, 2008-Ohio-2925, ¶53.

**{¶27}** Exposing one's private parts alone does not amount to engaging in conduct that would appear to be sexual conduct or masturbation. Because Trump's testimony indicated Raia exposed his genitals in public but did not engage in sexual conduct or masturbation, his testimony is inconsistent with his prior statement in the complaint. Accordingly, cross-examination on that issue should have been permitted.

**{¶28}** Finding error, however, does not end the analysis. Confrontation Clause errors are subject to harmless error review. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). When applying a harmless error analysis to this type of constitutional error, we must be sure such error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18 (1967). "The * * * inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall, supra*.

**{¶29}** To give full effect to the damaging potential of the improper denial of Trump's cross-examination, we must presume that Trump made a sworn statement that Raia engaged in conduct that appeared to be sexual conduct or masturbation one

9

day yet testified under oath before the jury that Raia merely exposed himself. The full damaging potential of Trump's prior inconsistent statement cannot be underemphasized. Trump's prior statement and his testimony state two different types of culpable conduct. Considering the entire case focused on whether Raia exposed himself in public, inconsistent statements about Raia's actions go to the heart of the prosecution's case.

{¶30} Raia also claims the trial court violated the Confrontation Clause in limiting his cross-examination of Keller.

{¶31} Raia claims his right to confront Keller was violated because he was not able to cross-examine her regarding her bias toward men. According to Raia's testimony Keller and Parsons are cross-dressers; cross-dressers harbor a bias against men; this bias against men would motivate these witnesses to falsely accuse Raia of exposing his genitals. Ergo, Raia claims he has a right to question Keller regarding her bias toward men.

{¶32} During cross-examination of Keller, Raia's attorney asked the following questions:

{¶33} "[Raia's defense attorney]: How long have the two of you [referring to Keller and Parsons] been friends?

{¶34} "[Keller]: Um, I'm trying to think here. It's been quite a few years now.

{¶35} "Any idea?

{¶36} "I think four years.

{¶37} "Four years?

{¶38} "Uh-huh.

{¶39} "How is it that your friendship evolved?

10

{¶40} "I met her through a support group.

{¶41} "[Prosecutor]: Your Honor, I'm going to object to anymore questioning about their personal lives."

{¶42} "THE COURT: I'll sustain that objection.

{¶43} "[Raia's defense attorney]: Well, I guess the concern I have is is (sic) there any sensitivity that you have towards the male sex?

{¶44} "[Prosecutor]: Objection.

{¶45} "THE COURT: Excuse me. I'm going to sustain that objection we are not going there. You do not have to answer that question."

{¶46} The question regarding whether Parsons had any sensitivity toward the male sex is a reasonable line of inquiry into Keller's potential bias against men regardless of whether Parsons was a cross-dresser. Evid.R. 607(A); *State v. Zack*, 9th Dist. Lorain Nos. 99CA007321, 98CA007270, 2000 Ohio App. LEXIS 2514, *23 (June 14, 2000). Accordingly, the trial court erred in sustaining the objection.

{¶47} Assuming the full damaging potential of the improper denial of the cross-examination, Keller would have testified that she had a bias against men, and the jury would have concluded such bias materially affected her perception of events.

{¶48} Consequently, Parsons' testimony is the only untainted testimony. When Parsons' testimony, combined with the other tainted testimony is weighed against Raia's general denials, we cannot say the trial court's errors were harmless beyond a reasonable doubt and Raia denied the charges.

{¶49} Accordingly, the second, third and fourth assignments of error have merit.

{¶50} The judgment of the Portage County Municipal Court is reversed. We remand to the trial court for further proceedings.

11

TIMOTHY P. CANNON, P.J., concurs,

CYNTHIA WESTCOTT RICE, J., concurs in part and dissents in part with a Concurring/Dissenting Opinion.

———————————

CYNTHIA WESTCOTT RICE, J., concurs in part and dissents in part with a Concurring/Dissenting Opinion.

{¶51} I concur with the majority's disposition of appellant's first assignment of error. I also agree that the trial court committed error when it denied appellant the opportunity to cross-examine the specified witnesses using the means cited in his assignments of error. Because, however, the testimony of the three primary prosecution witnesses, Trump, Parsons, and Keller, were completely consistent regarding the material elements of the charge, I find these errors harmless. I therefore dissent on the majority's disposition of appellant's second, third and fourth assignments of error.

{¶52} In the context of one's right to confront a witness, the United States Supreme Court has commented:

{¶53} Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall

12

strength of the prosecution's case. *Delaware v. Van Arsdall*, 475 U.S. 673, 686-687 (1986).

**{¶54}** In this matter, the testimony of Trump, Parsons, and Keller, all witnesses to the crime, were overwhelmingly consistent in their rendition of events. In particular, each witness unequivocally testified that appellant exposed his private parts. The only testimony that did not corroborate the state's witnesses was, not surprisingly, that of appellant. I would therefore hold the overall strength of the state's case was so significant as to render any error in precluding cross-examination relating to the original complaint or any potential gender bias harmless beyond a reasonable doubt.

**{¶55}** For the foregoing reasons, I would affirm appellant's conviction.