[Cite as *In re A.E.F.*, 2024-Ohio-2213.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| IN THE MATTER OF: | **CASE NO. 2024-T-0009** |
| A.E.F. | |
| | Civil Appeal from the Court of Common Pleas, Juvenile Division |
| | Trial Court No. 2020 JC 00004 |

## O P I N I O N

Decided: June 10, 2024
Judgment: Affirmed

*Thomas E. Zena* and *Miriam M. Ocasio*, 4822 Market Street, Suite 301, Youngstown, OH 44512 (For Appellant, Kandis Forney).

*Bryant Youngblood, Jr.,* pro se, 2351 Goleta Avenue, Youngstown, OH 44504 (Appellee).

*Alissa A. Kegarise*, Amsden Legal, LLC, 1835 Taft Avenue, Niles, OH 44446 (Guardian Ad Litem).

JOHN J. EKLUND, J.

{¶1} Appellant, Kandis Forney (Mother), appeals the December 14, 2023 judgment entry of the Trumbull County Court of Common Pleas, Juvenile Division adopting the magistrate's decision to modify the shared parenting plan for the minor child A.E.F. (DOB 7-7-2015) between appellant and appellee, Bryant Youngblood Jr. (Father).

{¶2} Mother raises two assignments of error, both of which argue the trial court abused its discretion by modifying the shared parenting plan to name Father as residential parent for school purposes for A.E.F.

{¶3} Having reviewed the record and the applicable caselaw, we find Mother's assignments of error to be without merit. The trial court did not abuse its discretion in adopting the magistrate's decision to modify the shared parenting plan. The magistrate's decision correctly applied the law to the facts before the court. The court did not abuse its discretion by determining that Mother's move to Maple Heights less than six months after entering the Shared Parenting Plan created a change in circumstances for A.E.F. and that modification to the Shared Parenting Plan was in her best interest under the best interest factors set forth in R.C. 3109.04(F)(1)(a) through (j) and R.C. 3109.04(F)(2).

{¶4} Therefore, we affirm the judgment of the Trumbull County Court of Common Pleas, Juvenile Division.

## Substantive and Procedural History

{¶5} Mother and Father are the parents of A.E.F. The parties entered into a Shared Parenting Plan, which the trial court adopted on January 27, 2022. The relevant terms of the Shared Parenting Plan provided that Mother would be the residential parent for school attendance purposes, but that the parties would

> share responsibility for decisions concerning the upbringing, education, medical care, dental care, spiritual care and all matters concerning the general welfare of the child. For this purpose, both parents shall consult each other and confer together on matters affecting the welfare of their child, taking into account the best interests, and as far as possible, the desires of said child.

2

Case No. 2024-T-0009

{¶6} Father's parenting time was from Thursday to Sunday one week followed by Friday to Monday the next week during the school year.

{¶7} On September 27, 2022, Father filed a Motion to Modify Shared Parenting Plan. He requested a modification so that he could be designated the residential parent for school attendance purposes because Mother left the area and relocated to Maple Heights without notifying Father. As a result of the move, Mother changed A.E.F.'s school without consulting Father.

{¶8} On October 11, 2022, Mother filed a Notice of Change of Address, notifying the court of her new address in Maple Heights.

{¶9} Also on October 11, Mother filed a Motion to Terminate Shared Parenting Plan so that she could be legal custodian to further determine all other parenting issues.

{¶10} The trial court set the matter for a hearing and re-appointed the Guardian ad Litem (GAL) who had previously been appointed when the Shared Parenting Plan was first put in place.

{¶11} The court conducted a hearing on May 31, 2023, and July 6, 2023. Father, Mother, and the GAL testified, and the magistrate conducted an in camera interview with A.E.F.

{¶12} A.E.F. was enrolled in St. Rose Catholic School in Girard, Ohio. At the start of a new school year, Mother enrolled A.E.F. in Holy Family Catholic School in Parma, Ohio. Father testified that he found out that Mother had moved, changed A.E.F.'s doctor, dentist, and school a few weeks before school started. He received this information from the My Family Wizard app, used to facilitate the parties' shared parenting. He said Mother

3

never directly contacted him about the change. He was only notified because Mother updated the information in the app.

{¶13} Father said that his work schedule is flexible and allowed him to continue his pickup and drop offs at the school in Parma, despite the 1 hour and 13-minute drive. He picked up A.E.F. after school on either Thursday or Friday on alternating weeks during the school year. This meant that he would have to pick A.E.F. up from school on Thursday, drop her off on Friday, and then pick her up again after school on Friday. He said he did not anticipate this arrangement when entering into the Shared Parenting Agreement.

{¶14} Father said that Mother enrolled A.E.F. in cheerleading after school without notifying him. The practices took place on Friday afternoons, with games on Saturday and Sunday, all during his parenting time. He did not object to the activity, but did take issue with not being notified about an extracurricular that would occur exclusively during his parenting time. In addition, Mother signed A.E.F. up for choir without notifying Father. Choir practice took place on Thursdays after school, which affected Father's parenting time every other week.

{¶15} Despite wanting modification, Father wanted to maintain a shared parenting arrangement. He said that he would not have filed for modification but for Mother's move to Maple Heights and changing A.E.F.'s school. He said he would reenroll A.E.F. in St. Rose.

{¶16} Mother testified that she decided to move to Maple Heights in March 2022 and completed the move in May. She said that she believed her prior counsel had filed a notice with the court of her change of address. However, this did not occur. She admitted

4

that she did not consult with Father before changing A.E.F.'s school or before signing A.E.F. up for cheerleading and choir. She said she signed A.E.F. up for cheerleading without knowing what day practice would be until "well after she was signed up for it and it happened to be on Friday."

**{¶17}** She said that she believed it was within her discretion to choose the school for A.E.F. because she had been designated the residential parent for school purposes and was paying for the schooling. She said she notified her attorney of her move and believed that he notified the court of her move.

**{¶18}** Mother said because she has to pick up her other children after school, she is not able to take A.E.F. to Father's home after school. The drive from her home to the school in Parma was approximately 30 minutes.

**{¶19}** Mother testified that despite filing a motion to terminate the Shared Parenting Plan, she believed the Shared Parenting Plan could continue.

**{¶20}** Both parties acknowledged some tardiness issues with A.E.F.'s school attendance. Mother said that she dropped A.E.F. off for school on time, but that she dawdled on her way to class, causing her tardiness. However, according to the GAL's interview with school officials, A.E.F.'s tardiness was primarily due to Mother's arriving late. Mother was responsible for A.E.F. being tardy 19 of 29 times.

**{¶21}** The GAL testified Mother's move had created travel issues for pickup and drop offs and that some of A.E.F.'s extracurricular activities in Maple Heights were during Father's parenting time. Based on her investigation, the GAL found several of Mother's claims about shared parenting issues with Father to be questionable.

5

**{¶22}** Mother's counsel suggested that the GAL had a bias against Mother that she had carried over from her initial appointment to the case. The GAL responded to this saying, "I would say not necessarily. I mean, I'm human, so, you know, I knew that I had thought that originally, but I did recommend a shared parenting at that time, which did occur. And I try to be, you know, completely as objective as possible in every case, so I wouldn't say that." In her initial appointment, the GAL had recommended that Mother be the residential parent for school purposes.

**{¶23}** The GAL recommended that the Shared Parenting Plan be modified. Her recommendation was for Father be named as the residential parent for school purposes and to modify parenting time to accommodate school and work schedules. She said A.E.F. had done well in both schools and agreed with Mother's counsel that there was "not a big margin" between the parents as to which would be best as residential parent for school purposes.

**{¶24}** The magistrate issued a Magistrate's Decision on July 31, 2023. The magistrate stated that in order to modify the Shared Parenting Plan, the court must find a change in circumstances, a modification is necessary to serve the best interest of the child, and the harm likely from the change of environment is outweighed by the advantage of the change.

**{¶25}** The court found a change in circumstances "occasioned by the Mother's decision to move to Maple Heights less than six months after entering into a Shared Parenting Plan." The move caused both parents to have a substantial drive to accommodate A.E.F.'s school attendance and extracurricular activities.

6

{¶26} The magistrate made the following findings under R.C. 3109.04(F)(1)(a) through (j):

(a) Both parents wished to have some form of shared parenting.

(b) The in camera interview with A.E.F. indicated that she was happy and well-adjusted in both schools.

(c) A.E.F. being well bonded with both parents and extended family.

(d) A.E.F. being comfortable in both homes and schools. The magistrate noted A.E.F.'s tardiness at school being a problem, but "more so with the Mother."

(e) There were no reported physical or mental health issues.

(f) That Mother used poor communication and unilaterally moved to Maple Heights, making "the parenting time schedule more difficult." Father's continued parenting time under the schedule was "due to his efforts of driving the child to/from school over an hour one way."

(g) There were no outstanding issues with child support payments.

(h) There was no evidence of either parent being subject to conviction for abuse or neglect.

(i) There was no evidence that either parent engaged in willful denials of the other parent's parenting time.

(j) There was no evidence either parent intended to relocate from their current residencies.

{¶27} Next, the magistrate considered the factors listed in R.C. 3109.04(F)(2)(a) through (E):

(a) Both parents had a limited ability to cooperate and make decisions jointly with respect to A.E.F. The parties "parallel parent rather than co-parent. Each has enrolled the child in activities without notification to the other."

(b) Both parties encourage sharing of love, affection, and contact between the child and the other parent.

(c) There was no evidence of any potential for domestic violence or parental kidnapping.

7

Case No. 2024-T-0009

(d) The geographic proximity of the parents to each other posed "some impediment of continuing under a plan of shared parenting. The parenting time under the plan is more difficult to implement due to the child attending school in the Parma area which is actually some distance from both parties' residences, but farther for the Father."

(e) The GAL recommended that the Shared Parenting Plan continue, but that it be modified for Father to be designated as the residential parent for school purposes.

{¶28} Based on these findings, the magistrate determined modification to the Shared Parenting Plan would be in A.E.F.'s best interests. The magistrate designated Father as the residential parent for school purposes and made Father responsible for all tuition, fees, and costs associated with school attendance.

{¶29} Mother filed an Objection to the Magistrate's Decision on August 14, 2023, and, after the transcript was prepared, filed a Supplemental Objection to the Magistrate's Decision on November 29, 2023.

{¶30} Mother argued the move and the new school did not qualify as a change in circumstances, there was no evidence that Father had been deprived of parenting time, and the magistrate's decision was "a punishment" for her misunderstanding." She suggested a better resolution would be to modify the pickup and drop off location for A.E.F. "for the convenience of both parties, with no other changes of any kind."

{¶31} On November 30, 2023, Mother filed a Supplemental Memorandum in Support of Objection to the Magistrate's Decision. In the Supplemental Memorandum, Mother argued the GAL had demonstrated a "predisposition of negativity toward the Mother and that she allowed that to carry over into this case." Mother said the GAL admitted there was no change in circumstances and no basis for modification.

8

**{¶32}** On December 14, 2023, the trial court adopted the Magistrate's Decision. The court reviewed all relevant evidence and motions and found no abuse of discretion, that the magistrate determined the factual issues, and appropriately applied the law. The trial court ordered the modification of the Shared Parenting Plan as set forth by the magistrate, including that Father be named as the residential parent for school purposes.

**{¶33}** Mother timely appealed, raising two assignments of error.

### Assignments of Error and Analysis

**{¶34}** Mother's assignments of error state:

**{¶35}** "[1.] The trial court committed an abuse of discretion in reallocating parental rights and responsibilities of the minor child and designating the Appellee as residential parent, and legal custodian, of the minor child."

**{¶36}** "[2.] The trial court committed an abuse of discretion in modifying the terms of the shared parenting plan previously adopted by the court."

**{¶37}** Mother argues that the trial court erred by modifying the shared parenting plan. Specifically, Mother argues the move and changing A.E.F.'s school without notifying Father was "solely a misunderstanding, and nothing more." She states that beyond this, "the record is void of proof that Mother intentionally failed to follow the terms of the shared parenting agreement in failing to notify Father of a change of address." She believes the GAL was biased against her and that the trial court erred because there was no evidence to "warrant a modification of the shared parenting plan, either in the reallocation of the parenting plan, or a modification of the terms of the parenting plan."

**{¶38}** "[D]ecisions involving the custody of children are accorded great deference on review." *In re K.R.,* 11th Dist. Trumbull No. 2010-T-0050, 2011-Ohio-1454, ¶ 28. "Thus,

9

any judgment of the trial court involving the allocation of parental rights and responsibilities will not be disturbed absent a showing of an abuse of discretion." *Id.* "When reviewing an appeal from a trial court's adoption of a magistrate's decision, an appellate court must determine whether the trial court abused its discretion in adopting the decision." *Huntington Natl. Bank v. Betteley*, 11th Dist. Lake No. 2015-L057, 2015-Ohio-5067, ¶ 17.

{¶39} "The term 'abuse of discretion' is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record." *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-208, ¶ 30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 [148 N.E. 362] (1925)." *State v. Raia*, 11th Dist. Portage No. 2013-P-0020, 2014-Ohio-2707, ¶ 9. Stated differently, an abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *Id.*, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] * * * By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Id.*, quoting *Beechler* at ¶ 67.

{¶40} "The highly deferential abuse-of-discretion standard is particularly appropriate in child custody cases since the trial judge is in the best position to determine the credibility of the witnesses and there 'may be much that is evident in the parties' demeanor and attitude that does not translate well to the record.'" *In re K.R.,* 2011-Ohio-1454 at ¶ 30, quoting *Wyatt v. Wyatt*, 11th Dist. Portage No. 2004-P-0045, 2005-Ohio-

10

Case No. 2024-T-0009

2365, ¶ 13. "In so doing, a reviewing court is not to weigh the evidence, 'but must ascertain from the record whether there is some competent evidence to sustain the findings of the trial court.'" *Id.*, quoting *Clyborn v. Clyborn*, 93 Ohio App.3d 192, 196, 638 N.E.2d 112 (3d Dist.1994).

{¶41} R.C. 3109.04(E)(1)(a), addresses the modification of a shared parenting plan and "requires the trial court to find (1) a change in the circumstances of the child and (2) that the modification is necessary to serve the best interest of the child before modifying a decree allocating parental rights and responsibilities." *In re K.R.* at ¶ 47.

{¶42} R.C. 3109.04(E)(1)(a) provides:

(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

{¶43} R.C. 3109.04(E)(2)(b) provides:

(2) In addition to a modification authorized under division (E)(1) of this section:

11

* * *

(b) The court may modify the terms of the plan for shared parenting approved by the court and incorporated by it into the shared parenting decree upon its own motion at any time if the court determines that the modifications are in the best interest of the children or upon the request of one or both of the parents under the decree. Modifications under this division may be made at any time. The court shall not make any modification to the plan under this division, unless the modification is in the best interest of the children.

{¶44} In contrast, R.C. 3109.04(E)(2)(c), addresses termination of a shared parenting plan, and merely requires the trial court to find that shared parenting is not in the best interest of the child. *In re K.R.* at ¶ 47. "Thus, while modification requires the court to find a change in circumstances in addition to the child's best interest, termination only requires the court to find that termination of the plan is in the child's best interest." *Id.*

{¶45} "In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in" R.C. 3109.04(F)(1) and (F)(2). R.C. 3109.04(F)(2).

{¶46} The factors in R.C. 3109.04(F)(1) are:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

12

Case No. 2024-T-0009

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to [certain criminal offenses] * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."

{¶47} The factors in R.C. 3109.04(F)(2) are:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem." R.C. 3109.04(F)(2)(a)-(e).

{¶48} The term "change in circumstances" is not statutorily defined. *Matter of G.M.,* 2017-Ohio-8144, 98 N.E.3d 795, ¶ 19 (11th Dist.). However, case law provides that "'the phrase is intended to represent an event, occurrence, or situation which has a material and adverse effect upon a child.'" *Id.*, quoting *Valentine v. Valentine,* 12th Dist. Butler No. CA2004-12-314, 2005-Ohio-6163, ¶ 9. A slight or inconsequential change in circumstances cannot form the basis for a change in circumstances. *Id.* Rather, the change "must be of substance." *Id.*

13

**{¶49}** First, the record does not support Mother's suggestion that the GAL was biased against her. In fact, the GAL was reappointed to the case, and in her initial appointment, the GAL recommended that Mother be the residential parent for school purposes.

**{¶50}** Next, the magistrate's decision, which the trial court adopted, acknowledged the distinction between termination of a shared parenting plan and modification of a shared parenting plan. The magistrate's decision specifically noted that a modification of a shared parenting plan requires the court to find "that there is a change in circumstances * * *."

**{¶51}** The trial court found that a modification was necessary due to a "change in circumstances occasioned by Mother's decision to move to Maple Heights less than six months after entering into the Shared Parenting Plan." Despite the flexible work schedules that both parties had, Mother's unilateral decision to change schools significantly increased travel time to accommodate A.E.F.'s schooling. The magistrate's decision explained that the move resulted in A.E.F. being tardy at least 29 times because of the substantial drive that both parents now had to accommodate. Further, Mother's move and the travel distance to the new school for both parents affected the parents' ability to ensure A.E.F. participated in, and the parents attended, extracurricular activities. The trial court did not abuse its discretion by finding a change in circumstances. *See Matter of G.M.,* 2017-Ohio-8144 at ¶ 19.

**{¶52}** Based on this change in circumstances, the trial court determined that it was in the best interest of A.E.F. to "continue under the existing Shared Parenting Plan with modifications to that plan." The magistrate explained why modifications were

14

necessary to serve A.E.F.'s best interest and set forth its findings as to each of the best interest factors in R.C. 3109.04(F)(1)(a) through (j) and the factors in R.C. 3109.04(F)(2).

{¶53} In ruling on Mother's objection to the magistrate's decision, the trial court reviewed the motions and evidence and overruled Mother's objections. We find no error in law in the trial court's determination. Further, we accord great deference to the trial court's adoption of the magistrate's decision and the record contained competent evidence to support the trial court's findings. *In re K.R.,* 2011-Ohio-1454 at ¶ 13.

{¶54} Accordingly, Mother's assignments of error are without merit.

{¶55} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, Juvenile Division, is affirmed.

MARY JANE TRAPP, J.,

ROBERT J. PATTON, J.,

concur.

15