[Cite as *Bunts v. Pilla*, 2025-Ohio-2046.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| LAURA BUNTS, et al., | **CASE NO. 2024-L-086** |
| Plaintiffs-Appellants, | |
| - vs - | Civil Appeal from the<br>Court of Common Pleas |
| MARY LEE PILLA, ESQ., et al., | |
| Defendants-Appellees. | Trial Court No. 2023CV 000569 |

## OPINION AND JUDGMENT ENTRY

Decided: June 9, 2025
Judgment: Affirmed

*Evan T. Byron*, Byron Legal, LLC, 29525 Chagrin Boulevard, Suite 250, Pepper Pike, OH 44122 (For Plaintiffs-Appellants).

*George D. Jonson*, *Lindsay M. Upton*, and *G. Todd Hoffpauir*, Montgomery Jonson, LLP, 600 Vine Street, Suite 2650, Cincinnati, OH 45202 (For Defendant-Appellee Mary Lee Pilla, Esq.).

*Jason D. Winter*, Winter, Trimacco, Co., LPA, 950 Main Avenue, Suite 1210, Cleveland, OH 44113 (For Defendant-Appellee Dorothea Kingsbury, Esq.).

JOHN J. EKLUND, J.

{¶1} Appellants, Laura Bunts, James Paul Ritter, and Victoria Bradley, appeal the judgment of the Lake County Court of Common Pleas, granting summary judgment in favor of Appellees, Mary Lee Pilla and Dorothea Kingsbury. Appellants' First Amended Complaint alleged multiple counts against Appellees flowing from an underlying claim that Appellees had unduly influenced Appellants' father, James P. Ritter (Mr. Ritter), and caused him to leave each child only a $1.00 inheritance.

{¶2} Appellants have raised two assignments of error: first, that the trial court erred in denying Appellants' motion for leave to amend their request for admissions (RFAs) after Appellants failed to respond to Appellees' RFAs and they were deemed admitted; second, that the trial court erred in granting Appellees' unopposed motions for summary judgment.

{¶3} Having reviewed the record and the applicable caselaw, we find Appellants' assignments of error are without merit. First, the trial court did not abuse its discretion by denying Appellants' motion to withdraw their admissions because Appellants did not present compelling circumstances that would warrant the trial court permitting withdrawal. Second, our de novo review of the matter finds no error in the trial court's grant of summary judgment. There was no genuine issue of material fact to support the conclusion that Appellees exerted undue influence over Mr. Ritter, and Appellees were entitled to judgment as a matter of law.

{¶4} Therefore, we affirm the judgment of the Lake County Court of Common Pleas.

**Substantive and Procedural History**

{¶5} Appellants are the children of James P. Ritter and Bernice Ritter. Appellants filed a complaint against Appellees on May 3, 2023, and filed their First Amended Complaint on August 31, 2023.

{¶6} Appellants' First Amended Complaint alleged that Appellees, while representing Mr. Ritter, had exerted undue influence over him to cause him to leave Appellants only a $1.00 inheritance. Their complaint Asserted claims for: (1) undue influence; (2) tortious interference with expectancy of inheritance; (3) breach of fiduciary

duty/breach of trust; (4) civil conspiracy; (5) conversion; (6) accounting; (7) unjust enrichment/disgorgement; (8) injunctive relief; (9) declaratory judgment; and (10) abuse of process.

{¶7} The matter was set for jury trial on April 14, 2025, and the parties engaged in motion practice and discovery.

**Requests for Admissions:**

{¶8} On December 12, 2023, the trial court conducted a case management conference, and the parties agreed to a deadline of January 31, 2024, for all paper discovery and production of documents. Appellees served RFAs on December 1, 2023. Appellants failed to respond timely. Kingsbury filed a Notice of Plaintiff's Admissions on January 3, 2024, informing the court that the RFAs were deemed admitted. Pilla's counsel agreed to a three-week extension of time, but Appellants failed to respond. Three days after that deadline, Pilla's counsel sent an email notification, advising that if responses were not provided, the RFAs would be deemed admitted. Appellants' counsel responded, saying he would provide the responses that day but ultimately failed to do so. Pilla then filed a Notice of Admissions on January 22, 2024.

{¶9} Both Kingsbury and Pilla also filed motions to compel discovery. These motions were pending both before and after the RFAs had been deemed admitted. Appellants sought multiple extensions to respond to the motions to compel, which the trial court granted. However, Appellants failed to timely respond, citing counsel's heavy litigation load and Bunts being unavailable for several weeks due to travel. During this time, Appellants did not seek to withdraw the admissions.

Case No. 2024-L-086

{¶10} On March 27, 2024, the trial court held a telephone conference on the pending motions to compel. That conference was the first time that Appellants addressed the RFAs being deemed admitted.

{¶11} On March 29, 2024, Appellants filed a Motion for Leave to Respond to Defendants' Request for Admissions. Appellants sought leave to deny 25 of Pilla's RFAs and eight of Kingsbury's. Although this was not formally a request to withdraw the admissions that had already been deemed admitted, the trial court construed it as such.

{¶12} On May 31, 2024, the trial court issued a judgment entry overruling the motion. The trial court said that the motion did not contain any proof that Appellants' counsel was unable to respond to the RFAs and did not affirmatively state that Bunts was the sole plaintiff who could assist with the responses.

{¶13} The trial court found that Appellants had

failed to provide adequate, let alone compelling, circumstances to allow withdrawal of the admitted matters. [Appellants] were on notice . . . that the unanswered RFAs were deemed admitted yet [Appellants] took no action whatsoever to remedy the situation, either by moving the court for additional time or by filing objections to the RFAs. In fact, [Appellants] did not respond at all concerning the admissions issue until the court ordered [Appellants'] counsel to file a brief during the March 27th phone conference. . . . The court can only conclude that [Appellants] willfully ignored the time requirements of Civ.R. 36(A) and the court's Case Management deadline.

**Summary Judgment:**

{¶14} In August 2024, Appellees filed motions for summary judgment.

{¶15} On September 13, 2024, Appellants filed a Motion for Extension to Respond to Dispositive Motions. On September 16, 2024, the trial court granted an extension until October 4, 2024.

Case No. 2024-L-086

**{¶16}** On October 4, 2024, Appellants sought a second extension of time to respond. Appellees jointly opposed the extension. On October 8, 2024, the trial court granted Appellants until October 11, 2024, to file their response but stated that "NO FURTHER EXTENSIONS SHALL BE PERMITTED."

**{¶17}** On October 11, 2024, Appellants sought a third extension of time to respond. Appellees again jointly opposed the extension. On October 15, 2024, the trial denied the extension of time to respond and proceeded to rule on Appellees' unopposed motions for summary judgment.

**{¶18}** The trial court's judgment entry ruling on the summary judgment motions found that the facts were "almost entirely undisputed." Those facts are as follows:

**{¶19}** In 2012 James and Bernice Ritter made an estate plan using pour-over wills and a trust that included Appellants as contingent beneficiaries. Neither Pilla nor Kingsbury were involved in this initial estate planning.

**{¶20}** In 2015 Appellants sought guardianship over both James and Bernice Ritter. Although the Probate Court appointed a guardian over Mrs. Ritter, the court found Mr. Ritter competent to manage his own affairs. After this, Mr. Ritter hired Kingsbury to amend his estate planning documents to leave Appellants only $1.00. Kingsbury was named the successor trustee. Over the coming years, Mr. Ritter executed several amendments to his trust and one codicil to his will, each of which ratified the $1.00 bequest to Appellants. Kingsbury drafted the first, second, and third amendments. A non-party, Alan Ross, prepared the fourth amendment, which named Pilla as the successor trustee and beneficiary. Pilla prepared the fifth amendment and the will codicil, which ratified her status as a beneficiary.

{¶21} Appellants filed for guardianship a second time in 2016. The Probate Court again found Mr. Ritter to be competent in 2018. Mrs. Ritter died on September 13, 2016, and Mr. Ritter died on November 26, 2018. Appellants did not challenge the will or trust in the Probate Court following Mr. Ritter's death.

{¶22} The trial court, relying on the admitted RFAs, found the following facts to be undisputed (Items marked with an * denote matters that Appellants did not seek to withdraw in the Motion for Leave to Respond to Defendants' Request for Admissions):

- Appellants had no evidence that Mr. Ritter did not intend to make the changes in the first trust amendment when it was executed.*

- Appellants had no evidence that Mr. Ritter lacked the mental capacity necessary to make the changes in his testamentary documents.

- Appellants did not have any personal, direct communication with Mr. Ritter in 2017 and 2018 and did not attend any doctor's appointments.*

- Appellants had no evidence that Mr. Ritter never resided in memory care.

- Appellants did not have any evidence that Mr. Ritter was coerced when he executed his testamentary documents.

- Appellants did not have any evidence that Pilla was involved in drafting the first through fourth trust amendments.

{¶23} The trial court determined that Appellees did not exert undue influence resulting in a disposition which the testator would not otherwise have made because Mr. Ritter had recently been deemed competent to manage his own affairs when he made the decision to leave Appellants only $1.00 each. All subsequent amendments that either Kingsbury or Pilla drafted simply reaffirmed the decision that Mr. Ritter had made shortly after the Probate Court made that determination. Further, Appellants had no contact with Mr. Ritter in the two years before his death and therefore had no evidence to support a

conclusion that he was a susceptible person during the time that he made any of the amendments to his testamentary documents.

{¶24} The trial court also declined to find a presumption of undue influence applied because of an attorney-client relationship between Mr. Ritter and Appellees. Specifically, the trial court said that Kingsbury was never a beneficiary of the will or trust. Although Pilla was named as a beneficiary under the fourth trust amendment, she did not actively prepare that document. The only amendment Pilla prepared was the fifth trust amendment, which reaffirmed Pilla's beneficiary status, but did not make her a beneficiary through Pilla's undue influence. Further, the trial court found that any such presumption of undue influence would be overcome because Mr. Ritter had decided to leave Appellants only $1.00 as an inheritance before he ever met Pilla.

{¶25} The trial court found that Appellees did not breach a fiduciary duty to Mr. Ritter because Appellants "never had an attorney-client relationship with either Pilla or Kingsbury, and there is no evidence before the court of any other fiduciary relationship." The trial court also noted that the breach of fiduciary duty claims would necessarily fail because it had already determined Appellees did not unduly influence Mr. Ritter.

{¶26} Finally, the trial court determined that Counts 2 and 4 through 10 were dependent on Appellants establishing undue influence. By failing to establish undue influence, the trial court determined that Appellees were entitled to summary judgment on each of those counts as well.

{¶27} Appellants timely appealed raising two assignments of error.

Case No. 2024-L-086

## Assignments of Error and Analysis

{¶28} Appellants' first assignment of error states: "The trial court committed reversible error in denying Plaintiffs' motion for leave to respond to Defendants' requests for admissions."

{¶29} "[T]he standard of review of a trial courts decision in a discovery matter is whether the court abused its discretion." *Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 592 (1996); *see Cty. Risk Sharing Auth., Inc. v. State*, 2022-Ohio-4043, ¶ 65 (11th Dist.). "The term 'abuse of discretion' . . . is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record." *State v. Underwood*, 2009-Ohio-2089, ¶ 30 (11th Dist.). An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2010-Ohio-1900, ¶ 62 (2d Dist.), quoting *Black's Law Dictionary* (8th Ed. 2004); *State v. Raia*, 2014-Ohio-2707, ¶ 9 (11th Dist.). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] . . . By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Raia* at ¶ 9, quoting *Beechler* at ¶ 67.

{¶30} Civ.R. 36 governs requests for admissions and provides in relevant part:

(A) Availability; Procedures for use.

. . .

(1) Each matter of which an admission is requested shall be separately set forth. The party to whom the requests for admissions have been directed shall quote each request for admission immediately preceding the corresponding answer or objection. The matter is admitted unless, within a period designated in the request, . . . the party to whom the request is directed serves upon the party requesting the admission a written answer

Case No. 2024-L-086

or objection addressed to the matter, signed by the party or by the party's attorney.

. . .

(B) Effect of admission.

Any matter admitted under this rule is conclusively established *unless the court on motion permits withdrawal or amendment of the admission.* Subject to the provisions of Civ.R. 16 governing modification of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining his action or defense on the merits.

(Emphasis added.)

**{¶31}** When a party fails to timely respond to the request for admissions, "the admissions [become] facts of record which the court must recognize." *Cleveland Trust Co. v. Willis*, 20 Ohio St.3d 66, 67 (1985). "It is within the trial court's discretion whether it will allow the withdrawal of admissions." *Ohio CAT v. Stoneman*, 2015-Ohio-3546, ¶ 14 (11th Dist.). Even where a party does not properly move to amend admissions that have been deemed admitted as required by Civ.R. 36(B), the trial court retains the discretion whether to allow the withdrawal of admitted admissions. *Id.* at ¶ 15, citing *Balson v. Dodds*, 62 Ohio St.2d 287, 290, fn. 2 (1980). The trial court also maintains the discretion whether to accept the filing of late responses to requests for admission. *Id.* at ¶ 14.

**{¶32}** "Under compelling circumstances, the court may allow untimely replies to avoid the admissions." *Willis* at 67; *Whitehouse v. Customer is Everything!, Ltd.*, 2007-Ohio-6936, ¶ 26 (11th Dist.). If a party seeking to withdraw admissions sets forth "compelling circumstances" for doing so, the trial court must then make two determinations: first, "the trial court must next determine whether the withdrawal of the admissions will aid in presenting the merits of the case." *Whitehouse* at ¶ 31. Second, if

the trial court so determines, the burden shifts to the party who obtained the admissions to establish that prejudice in maintaining the action will result. *Id.*

**{¶33}** Circumstances involving a failure to set forth "compelling circumstances" to justify the failure to respond to requests for admissions can include an unsuccessful attempt to request an extension of time just before the deadline (*see Thompson v. Weaver*, 1998 WL 472329, *2 (6th Dist. Aug. 7, 1998)); a party's illness (*see Willis* at 67-68); erroneously believing misplaced admissions had been served (*see Whitehouse* at ¶ 33); and failure to respond after multiple requests and a motion to compel (*see Ohio CAT* at ¶ 22.).

**{¶34}** In both their brief and at oral arguments, Appellants argued that the compelling circumstances for withdrawing admissions must be weighed against the potential prejudice to the opposing party. *See Kutscherousky v. Integrated Communications Solutions, LLC*, 2005-Ohio-4275, ¶ 22 (5th Dist.). Appellants argue that Appellees would not suffer any prejudice because their requested withdrawal of the admissions came five months before the discovery cut-off date and more than a year before the scheduled trial.

**{¶35}** However, in *Whitehouse,* this Court addressed the holding in *Kutscherousky* with caution. We noted that the dissent in that case maintained that "the party seeking withdrawal of the admissions" must support the request with compelling circumstances. *Whitehouse* at ¶ 30, quoting *Kutscherousky* at ¶ 48 (Wise, J. concurring in part and dissenting in part.). According to *Willis*, this requirement is in addition to those set forth in Civ.R. 36(B). *Id.*

Case No. 2024-L-086

**{¶36}** *Whitehouse* rejected the reasoning Appellants set forth and affirmed the requirement that a party seeking to withdraw admissions must set forth "'compelling circumstances' *for the late filing of the answers* to the requests for admissions . . . ." (Emphasis added). *Id.* at ¶ 31. It is only if the party sets forth compelling circumstances that "the trial court must *next* determine whether" the party has satisfied the two-prong test set forth in *Willis.* (Emphasis added). *Id.*

**{¶37}** In this case, the trial court issued a detailed judgment entry explaining the procedural history of the case involving the RFAs. That procedural history included Appellants' failure to respond to the RFAs, Kingsbury's motion putting Appellants on notice that the RFAs had been deemed admitted, Pilla's counsel contacting Appellants' counsel and offering additional time to respond before Pilla also put Appellants on notice that the RFAs had been deemed admitted, and Appellants' failure to take any action until the trial court ordered them to file a brief on the issue. Most importantly, the trial court's judgment entry considered Appellants' basis for failing to respond to the RFAs and found that Appellants did not provide any proof that Appellants' counsel was unable to respond to the RFAs and did not affirmatively state that Bunts was the sole plaintiff who could assist with the responses.

**{¶38}** The trial court did not abuse its discretion by concluding that Appellants had failed to present compelling circumstances justifying their failure to respond to the RFAs. The trial court retains the discretion to conduct and control discovery in civil cases. Further, the trial court retains the discretion to determine whether to allow untimely replies to avoid admissions. Given these circumstances, we will not disturb that exercise of discretion here.

Case No. 2024-L-086

**{¶39}** Accordingly, Appellants' first assignment of error is without merit.

**{¶40}** Appellants' second assignment of error states: "The trial court committed reversible error in granting the Defendants' motions for summary judgment."

**{¶41}** We review a trial court's grant of summary judgment de novo. *Hapgood v. Conrad*, 2002-Ohio-3363, ¶ 13 (11th Dist.). "We review the trial court's decision independently and without deference, pursuant to the standards in Civ.R. 56(C)." *Allen v. 5125 Peno, LLC*, 2017-Ohio-8941, ¶ 6 (11th Dist.).

**{¶42}** Summary judgment is appropriate when (1) no genuine issue as to any material fact exists; (2) the party moving for summary judgment is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion and it is adverse to the nonmoving party. *Holliman v. Allstate Ins. Co. Corp.*, 1999-Ohio-116, ¶ 6. The initial burden is on the moving party to set forth specific facts demonstrating that no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 1996-Ohio-107, ¶ 18. If the movant meets this burden, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists for trial. *Id.*

**{¶43}** "Where, however, a party offers no opposition and alleges no specific facts or evidentiary materials that could be construed in its favor, it does so to its peril." *Secrest v. Gibbs*, 2015-Ohio-42, ¶ 45 (11th Dist.). Civ.R. 56(E) "makes it clear that a non-moving 'party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.'" *Id.* at ¶ 46. When

a party fails "to make any argument or provide any evidentiary material to overcome a motion for summary judgment, that party has, in effect, conceded the issue to the movant." *Id.*

{¶44} "A will and trust admitted to probate are presumed valid." *Nickles v. Spisak*, 2014-Ohio-2709, ¶ 17 (11th Dist.). The party contesting the testamentary documents has the burden of proving undue influence. *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 64 (1991); *West v. Henry*, 173 Ohio St. 498, 502 (1962).

{¶45} In this case, Appellants did not challenge any of the testamentary documents in the Probate Court. The present case deals specifically with claimed undue influence that Appellees exerted over Mr. Ritter in reference to those testamentary documents.

{¶46} The elements of undue influence are: (1) a susceptible testator; (2) another's opportunity to exert improper influence; (3) the fact that improper influence was exerted or attempted; and (4) the result demonstrates the effect of such improper influence. *Nickles* at ¶ 17.

{¶47} A rebuttable presumption of undue influence arises when: (1) an attorney-client relationship exists between the testator and an attorney; (2) the attorney is a beneficiary in the testamentary document; (3) the attorney is not related by blood or marriage to the testator; and (4) the attorney "actively participated in the preparation" of the testamentary document. *Krischbaum* at 64. This presumption may be rebutted by a preponderance of the evidence. *Id.* at 64-65.

{¶48} First, we address whether to apply the presumption of undue influence based on the attorney-client relationship between Appellees and Mr. Ritter. Kingsbury

Case No. 2024-L-086

was never named as a beneficiary of any testamentary document. Therefore, there is no basis to support applying the rebuttable presumption of undue influence as to Kingsbury. Although Pilla was named as a beneficiary of a testamentary document, she was named the beneficiary under the fourth trust amendment, which was drafted by a non-party. There is no evidence in the record to support the conclusion that Pilla "actively participated in the preparation" of the testamentary document that named her as a beneficiary. While she did prepare the fifth trust amendment, which retained her status as a beneficiary, Pilla's action does not raise the rebuttable presumption of undue influence.

{¶49}  Turning to the elements of undue influence, there is no genuine issue of material fact to support the conclusion that Appellees exerted undue influence over Mr. Ritter, and Appellees were entitled to judgment as a matter of law. There was no evidence that would support a conclusion that Mr. Ritter was a susceptible testator.

{¶50}  Next, there was no evidence to suggest that undue influence was exerted or attempted. Appellants' claims rest on the assumption that Mr. Ritter changed his testamentary intent to benefit Appellees' pecuniary interests. But, there was no evidence to demonstrate the effect of the claimed improper influence that related to Mr. Ritter changing his testamentary intent. Later amendments to the trust continued to ratify Mr. Ritter's earlier decision to leave Appellants only $1.00. Viewing the evidence in favor of Appellants, reasonable minds can only conclude that any claimed undue influence Appellees could have exerted did not have the effect of Mr. Ritter's reducing Appellants' testamentary bequest to them.

Case No. 2024-L-086

{¶51} Appellees were entitled to summary judgment on undue influence. As each of Appellants' claims relied on establishing undue influence, the trial court properly dismissed Appellants' complaint.

{¶52} Accordingly, Appellants' second assignment of error is without merit.

{¶53} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is affirmed.


MATT LYNCH, J.,

SCOTT LYNCH, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, Appellants' assignments of error are without merit. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against Appellants.

---

JUDGE JOHN J. EKLUND

---

JUDGE MATT LYNCH,
concurs

---

JUDGE SCOTT LYNCH,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2024-L-086